UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Lester Knighten,                        )
                                        )
                Petitioner,             )
                                        )
        v.                              )   Civil Action No.  14-1588 (CKK)
                                        )
United States Parole Commission, *et al.*, )
                                        )
                Respondents.            )
_____ )

## MEMORANDUM OPINION

This matter is before the Court on Lester Knighten's "Motion for Issuance of a Writ of Mandamus or Similar Relief Based on the United States Parole Commission's Refusal to Terminate Supervision Pursuant to 18 U.S.C. [§] 4211(c)(1) and 28 C.F.R. [§] 2.43(c)," which is construed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241.[1]  For the reasons discussed below, the petition will be denied.

I. BACKGROUND

Petitioner, formerly enlisted in the United States Navy, was convicted under the Uniform Code of Military Justice ("UCMJ") by a general court-martial of disobeying a lawful order of his

---

[1]  Petitioner initially filed the petition in the United States District Court for the Northern District of Illinois, and that court treated the petition as one for a writ of habeas corpus under 28 U.S.C. § 2241 before transferring the matter *sua sponte* to this district based on the location of petitioner's custodian, the Naval Clemency and Parole Board.  *See Knighten v. U.S. Parole Comm'n*, No. 13 C 7114, 2014 WL 2014 WL 4627813 (N.D. Ill. Sept. 16, 2013).  Because petitioner remains under parole supervision, he is "in custody" for purposes of 28 U.S.C. § 2241.  *See Valona v. United States*, 138 F.3d 693, 695 (7th Cir. 1998) ("Parole is a form of 'custody', so it is proper to use § 2241 to contest its continuation . . . ."); *Ramsey v. U.S. Parole Comm'n*, __ F. Supp. 3d __, 2015 WL 970668, at *4 (D.D.C. Mar. 4, 2015) ("A petitioner who is on parole is in government custody for the purposes of seeking *habeas corpus* relief."), *appeal docketed*, No. 15-5121 (D.C. Cir. Apr. 29, 2015).  Petitioner's claims under the Administrative Procedure Act, *see* Pet. at 2, 4, 8-10, will be dismissed.

1

commanding officer, and of rape, sodomy, and indecent acts upon the body of his 12-year old step-daughter. *See* Federal Respondents' Opposition to Petitioner's Petition for a Writ of Habeas Corpus, ECF No. 39 ("Fed. Opp'n"), Exs. B & B-1 (respectively, General Court-Martial Order 1-97 and Naval Clemency and Parole Board Summary).  On February 14, 1997, he was sentenced to a 20-year term of confinement. *Id*., Ex. B at 2.  Initially petitioner was confined at the United States Disciplinary Barracks in Fort Leavenworth, Kansas. *See id*. at 2.  He was transferred to the custody of the Federal Bureau of Prisons ("BOP") on August 2, 2002.[2] *Id*., Ex. A (Sentence Monitoring Computation Data as of 06-14-2006) at 1.  "Through good conduct and successful program participation, [he] earned a transfer to the low security federal facility in Beaumont, Texas." Petitioner's Response to the R[e]spondent's Answer Opposing Petitioner's Writ of Mandamus/Writ of Habeas Corpus, ECF No. 42 ("Pet'r's Reply") at 3 (page numbers designated by ECF).  The United States Parole Commission ("USPC") released petitioner on parole from the Beaumont facility on December 4, 2006, and he is to remain under parole supervision through December 4, 2016.  Pet'r's Reply at 3; Fed. Opp'n, Ex. E (Certificate of Parole) at 1.

Supervision reports from December 2006 through 2010 reflected petitioner's satisfactory adjustment to supervision.  Fed. Opp'n, Exs. G-H (respectively, Supervision Reports covering period from December 4, 2006 through December 4, 2008, and period from December 4, 2008 through April 6, 2010).  On June 9, 2010, the USPC conducted a parole termination hearing. *See generally id*., Ex. J (Termination Hearing Summary).  The hearing examiner stated:

> The subject's completion [of a] Sex Offender Treatment Program [and] his interaction with his two biological daughters 18 and 19 years of age who live in Maryland and his stepdaughter who is 22 or 23 [who] lives at [the] home [he] and his wife have bought . . . demonstrate[] that he is on the appropriate path.  This examiner does

---

[2] *See* 10 U.S.C. § 858(a) ("[A] sentence adjudged by a court-martial . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in penal or correctional institution under the control of the United States . . . .").

> not believe that there is a likelihood the subject will commit another criminal act or a safety issue if he is terminated from supervision . . . . [T]his examiner believes our subject is ready for release on 12/4/2011.

*Id*., Ex. J at 2. The USPC disagreed, however, noting "that the instability of [petitioner's] employment record indicates an increased likelihood that [he] will engage in criminal behavior and that continued supervision [was] necessary to monitor [his] compliance." *Id*., Ex. L (Notice of Action dated September 2, 2011). Petitioner's appeal to the National Appeals Board was unsuccessful. *See* Fed. Opp'n, Ex. M (Notice of Action on Appeal dated December 12, 2011).

Subsequently, on the realization that it lacked authority to terminate parole supervision of a person sentenced under the UCMJ, the USPC referred to the Naval Clemency and Parole Board ("NC&PB") a supervision report for the period from April 6, 2010 through May 1, 2012, and a motion for early termination of parole supervision submitted by petitioner's counsel. *See id*., Exs. O-P (respectively, Letter to USPC from John F. Murphy, Federal Defender Program. U.S. District Court for the Northern District of Illinois, dated May 15, 2012 with attachments, and Letter to Michael Pentangelo, Supervision Officer, Northern District of Illinois, from Corey D. Mitchell, Case Analyst, USPC, dated June 19, 2012).

Petitioner submitted to the NC&PB requests for clemency in July 2012 and September 2013. *Id*., Exs. Q & T (respectively, NC&PB Parolee Clemency Request Statements dated July 27, 2012 and September 19, 2013). Notwithstanding petitioner's "satisfactory adjustment to supervision," stable employment and completion of sex offender treatment in 2010, *id*., Ex. R (Naval Clemency and Parole Board Supervision Report dated April 7, 2012) at 2, early termination of parole was not recommended due to United States Probation Office policy with respect to sex offenses, *id*., Ex. R at 1; *see id*., Exs. U & W (respectively, Naval Clemency and

Parole Board Supervision Reports dated September 24, 2013 and January 15, 2014).  His parole officer stated:

> The first 2-3 years of his period of supervision were somewhat contentious in that he had . . . a difficult time transitioning to his status as a sex offender and accepting/dealing with the shame that he experienced as a result.  This did not translate into specific noncompliance per say [sic], but rather manifested more specifically in his ability to emotionally adjust.  It took him some time to obtain legitimate employment.  He seemed to want to avoid certain interactions that would require him to face the fact that he is a convicted sex offender and with that[] comes a very negative stigma.  He worked on this issue in treatment and came to a broader resolution and acceptance that appears to have allowed him to move forward in accepting responsibility for what this label brings and how he must manage it accordingly.  He has been employed steadily . . . , is a home owner, and appears to remain somewhat active in his community partaking in church sponsored events.  He seems to have a stable relationship with his wife . . . .  Although his adjustment to supervision has been without obvious issue for the past 3 years or so, my office restricts me from making a recommendation for early termination based solely on his offense, notwithstanding the notion that he remains compliant with supervision . . . and appears to be . . . cooperating with the legal restrictions set forth in his judgment.  His adjustment to supervision is satisfactory.

*Id*., Ex. U (email to Randall R. Lamoureaux, President, NC&PB, from Michael Pentangelo dated October 15, 2013).

Petitioner brings this action against both the USPC and the NC&PB asking that his parole supervision be terminated.  *See* Motion for Issuance of a Writ of Mandamus or Similar Relief Based on the United States Parole Commission's Refusal to Terminate Supervision Pursuant to 18 U.S.C. [§] 4211(c)(1) and 28 C.F.R. [§] 2.43(c), ECF No. 1 ("Pet.") at 1, 10-11 (page numbers designated by ECF).

## II.  DISCUSSION

### A.  *United States Parole Commission*

According to petitioner, his parole supervision was "scheduled to expire on December 04, 2011 after five years of supervision according to the conditional language and guidance of 18 U.S.C. [§ 4211(c)(1)]." Pet. at 2.  He further has asserted that the USPC must review his parole status annually, yet aside from a hearing in 2011, *id*. at 3, it "has literally ignored [petitioner's] subsequent requests for parole release review," *id*. at 4.  Petitioner attributed the USPC's inaction to its "effort to perpetuate its own existence," *id*. at 5, since abolition of federal parole in 1987 and its dwindling caseload, *see id*. at 6-7.  He faulted the USPC for refusing to terminate parole supervision, *id*. at 1, in violation his right to due process under the Fifth Amendment to the United States Constitution, *see id*. at 1, 8.

Petitioner's claims against the USPC are premised upon two mistaken beliefs.  First, petitioner presumes that the USPC is authorized to terminate parole supervision.  It is the Secretary of Defense or his designee, however, who is authorized to "remit or suspend any part or amount of the unexecuted part of any sentence" imposed under the UCMJ.  10 U.S.C. § 874(a). Because petitioner "is serving a sentence under the [UCMJ], early termination by the [USPC] is not authorized."  Resp't Opp'n, Ex. K (excerpt from USPC Rules and Procedures Manual) at 3.  If the USPC determines that the early termination of parole supervision is warranted, it must refer the matter to the appropriate military clemency board, which in petitioner's circumstances is the NC&PB.[3]  *Id*., Ex. K at 3.

Second, petitioner contends that he has a protected interest in early termination of parole supervision.  As there is no "constitutional . . . right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979), it follows that a parolee has no right to the early

---

[3]  It follows that the USPC conducted a parole termination hearing on June 9, 2011 in error.

termination of parole supervision, *see Myers v. U.S. Parole Comm'n*, 813 F.2d 957, 960 (9th Cir. 1987) ("No court or legislature has recognized a constitutional or statutory entitlement to early termination of parole, and we decline to do so here."); *Kennedy v. Reilly*, No. L–09–1802, 2010 WL 761204, at *2 (D. Md. Mar. 1, 2010), *aff'd*, 393 F. App'x 111 (4th Cir. 2010) (per curiam).[4]

"In this case, the NCPB has control over the conditions of [p]etitioner's parole, whereas the USPC merely oversees [his] parole in a supervisory capacity." *Knighten*, 2014 WL 4627813, at *2. The NC&PB thus retains jurisdiction over the early termination of parole supervision, and petitioner's claims against the USPC therefore will be dismissed.

### B. *Naval Clemency and Parole Board*

Each Military Department establishes a Clemency and Parole Board "to serve as the primary authority for administration of clemency [and] parole . . . policy and programs," and with exceptions not relevant to this case, "shall have approval authority for all clemency [and] parole . . . actions[.]" Department of Defense Instruction 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Authority* (March 11, 2013), Enclosure 2, para. 16(d).[5] The board may entertain requests from "[a] prisoner released on supervision . . . upon the prisoner's request. . . for clemency . . . until expiration of the sentence." *Id.*, Enclosure 2, para. 17.e. If the victim of the prisoner's underlying offense is under 16 years of age, a request for clemency must be approved by the Secretary of the Navy. *See* Fed. Opp'n, Ex. Y (NCPB/NC&PB Policy Letter 1-03).

---

[4] "There is no constitutional, statutory or regulatory right or entitlement for an individual to be granted clemency or to be released on parole." SECNAVINST 5815.3J ¶ 310(o) (emphasis removed).
[5] Department of Defense Instruction 1325.07 can be found at: http://www.dtic.mil/whs/directives/corres/pdf/132507p.pdf.

In petitioner's case, the NC&PB is the entity with the authority to terminate parole. *See* SECNAVINST 5815.3J ¶¶ 304, 401.[6] The NC&PB's objectives are:

> a. The preservation of good order and discipline.
> b. Equality in the administration of justice, including elimination of severe sentence disparity by the remission, mitigation, or suspension of the disparate portion of the sentence.

*Id.* ¶ 309. In determining "[t]he appropriateness of clemency or parole in an offender's case," the NC&PB considers its "objectives and on the basis of . . . criteria" which include:

> a. Nature of circumstances of the offenses as determined from the record of trial and allied papers, the court-martial order, and relevant investigative reports, if available.
> b. Military and civilian background of the offender . . . . .
> c. Post-trial progress report[s], to include an evaluation of the offender's post-trial attitude, conduct and performance . . . . Also relevant is whether the offender has recognized the wrongfulness of his . . . confining offense, shown genuine remorse, achieved a sense of purpose, demonstrated a desire for self-improvement, or exhibited self-discipline . . . [and]
> f. Any statement by any victim . . . .

*Id.* ¶ 310.

The Court's review of the decision of the NC&PB is limited. *See Miller v. Air Force Clemency & Parole Bd.*, No. 10–2621, 2011 WL 4402497 at *9 (D. Md. Sept. 20, 2011), *aff'd*, 472 F. App'x 210 (4th Cir. 2012) (per curiam). "The inquiry is not whether the decision is supported by the preponderance of the evidence, but whether there is a rational basis in the record for the Board's conclusion." *Id.* (*citing Misasi v. U.S. Parole Comm'n*, 835 F.2d 754, 758 (10th Cir. 1987)).

---

[6] Respondents describe SECNAVINST 5815.3J as "[t]he instruction governing the Department of the Navy Clemency and Parole System." Fed. Opp'n at 11. It can be found at: http://doni.daps.dla.mil/Directives/05000%20General%20Management%20Security%20and%20Safety%20Services/05-800%20Laws%20and%20Legal%20Services/5815.3J.pdf.

Petitioner believes that he has "successfully and enthusiastically done all that the system has asked of [him] in order to be re-integrated into normal society." Pet'r's Reply at 4. He notes his stable employment, absence of criminal activity, home ownership, and compliance with registration requirements, as well as the recommendation of the USPC hearing examiner that parole be terminated. *See id*. at 3-4. In addition, he states that he has "completed all required psychological programing," at the end of which "it was determined . . . that [he] posed no or very low risk of committing any crime." *Id*. at 3.

The NC&PB had before it records of the court-martial which set forth the nature of the underlying criminal offenses and the punishment imposed, petitioner's own requests for clemency, and post-release supervision reports covering the period from 2006 through 2014. It also had the benefit of the parole officer's observations of petitioner's initial challenges and his progress over the years.

Of particular relevance is the young age of the victim, the escalating nature of the sex offenses committed against her, and the familial relationship between petitioner and his step-daughter. Based on the parties' representations, the Court concludes that there was a rational basis for the NC&PB's decision to deny petitioner's request for the early termination of parole.

### III. CONCLUSION

Petitioner does not demonstrate that his "custody is in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court therefore will deny his petition for a writ of habeas corpus. An Order accompanies this Memorandum Opinion.

DATE: May 20, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge